THE ALLEN THEATRE & REALTY CO. *vs.* SPENCER B.
HOPKINS, INSPECTOR OF BUILDINGS.

JUNE 25, 1914.

PRESENT:   Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Building Laws.    Alteration of Building.    New Structure.*

Petitioner sought a permit for certain alterations and an addition to its theatre,
designed to enlarge the stage area by increasing its depth and to provide
additional dressing-room space, the addition being confined entirely to the
stage.    The theatre was completely erected when Pub. Laws, cap. 818, was
passed.

Pub. Laws, cap. 818, approved April 26, 1912, as applied to the case, provided
that if in the opinion of the building inspector of Providence, the public
safety would be secured, such inspector might, notwithstanding the pro-
visions of Gen. Laws, 1909, cap. 131, § 2, as amended by cap. 702 of the Pub.
Laws, approved May 12, 1911, issue his permit for the *erection* of the theatre,
provided that the land on which such theatre was to be erected was situated
on the corner of two streets, and if such theatre was to be so constructed,
that its front or rear should abut on one of such streets and so that each side
should abut either on a street or an open alleyway at least 6 feet wide and
so that each side of such theatre should extend on such street or alleyway
a sufficient length to provide for all exits required by Section 27 of Chapter
472 of the Public Laws of 1909:—

*Held,* that if portions of the present theatre building or all of it which it was
not necessary to tear down in order to make the additions contemplated,
remained in the new structure it would nevertheless constitute the erection
of a theatre building, and the owner thereof had the right to construct a
theatre complying with the provisions of cap. 818 whether such building
was brought into existence by entirely new construction or by enlargement
and addition to a theatre building already existing and the inspector of
buildings had authority to issue the permit therefor.

MANDAMUS.   Certified under Cap. 298, Section 5.

JOHNSON, C. J.   This is a petition for a writ of manda-
mus filed in the Superior Court for the counties of Providence
and Bristol by The Allen Theatre & Realty Company, a
Rhode Island corporation, against Spencer B. Hopkins, in
his capacity as Inspector of Buildings for the City of Provi-
dence, praying that the defendant be ordered to issue a permit
to the petitioner allowing it to make certain proposed altera-

tions and extensions to its present theatre building situated in the City of Providence.

The allegations of the petition may be summarized as follows: The petitioner alleges that it is now and for a long time has been the owner in fee simple of a lot of land in said City of Providence, situated on the southeasterly corner of Union and Worcester Streets, whereon, in the year 1911, it erected a building to be used as a theatre, said building covering the whole area of said lot with the exception of two alleyways (or Courts), each six feet in width, one on the south side and the other on the east side of said lot, both of which said alleyways were left open in conformity with the provisions of Section 2 of Chapter 131 of the General Laws, as amended by Chapter 702 of the Public Laws (approved May 12, 1911); that subsequent to the completion of said theatre building, said Section 2 of Chapter 131 of the General Laws (as amended), was further amended by the enactment of Chapter 818 of the Public Laws (approved April 26, 1912), under the terms of which the petitioner alleges that a theatre building in Providence, situated as petitioner's theatre is, on the corner of two streets, may be constructed without such an alleyway (or court) (six feet wide) in the rear and without such an alleyway (six feet wide) on the side not bordering on a street, provided each side of such building shall extend a sufficient length on a street or alleyway, as the case may be, to provide for all exits required by the provisions of Chapter 472, Section 27 of the Public Laws, passed at the January session, 1909, and provided further that, in the opinion of said City's Inspector of Buildings, the public safety will be thereby secured.

The petitioner further alleges that, being desirous of building and maintaining a theatre building on said lot, to be constructed and erected with all exits required by said Section 27 of Chapter 472 of the Public Laws, 1909, it made written application (in November, 1913), to the defendant for a permit to erect such building and to make such proposed alterations and extensions to its present theatre build-

ing, but that the defendant refused to issue such permit on the ground that he was in doubt as to his power in the premises, but advised the petitioner that, in his opinion, the public safety would be secured if said proposed alterations and extensions were made.

The petition finally alleges that the issuance of such permit is a ministerial act which the defendant inspector is in duty bound to perform because the proposed building not only conforms to all existing law, but also, in said inspector's opinion, its erection will secure the public safety, and prays that the court will order the defendant to issue such permit forthwith.

The petitioner's application for permit to build (Exhibit "A" filed with petition) is for "An addition to existing building with necessary alterations." It states that the materials of both the old building and the addition are brick, concrete and steel; that the area of the old building is 13,596 square feet, the area of the addition 919 square feet; that both are three stories in height with flat tar and gravel roof; that the building, when added to or altered, will be used for the same purpose as the present building, viz., a theatre; and that the present foundations and present walls will be used in the new work, being reinforced, if necessary, to comply with the law.

The petition concludes as follows: "The above building is an extension of the present building on said lot and is to be constructed with the plan herewith filed and to conform to all existing provisions of law."

The plan of the proposed addition (Exhibit "A" filed with petition) shows that the proposed "L" shaped addition is confined to the stage of the theatre; that the addition to the northeast side (or rear) of said theatre building will be about 110 feet long by 6½ feet wide, three stories in height, while the addition to the southeast side will be about 35 feet long by 6½ feet wide, also three stories in height; that such addition will close up all of the six foot alleyway on the northeast side (or rear) of said theatre and approximately thirty-five

feet of the six foot alleyway on the southeast side thereof; that all of this area will be excavated to a clear depth of seven feet; that on the stage floor the middle portion of the rear wall of the theatre will be removed, thereby increasing the depth of the stage about $6\frac{1}{2}$ feet, the floor of the addition being on the same level as the present stage floor; that several additional dressing-rooms and a chorus room will be secured with a new stairway on the southeast side leading to the new dressing-rooms on the second and third tier floors, with some other minor changes.

(1)     It thus appears that the contemplated addition is apparently designed for two purposes: First,—to enlarge the stage area by increasing its depth; second,—to provide additional dressing room space. The addition is in reality an enlargement of the theatre's stage and, as already suggested, is confined entirely to the stage, no part of the theatre on the auditorium side of the proscenium wall being in any respect affected or changed.

The present theatre is approximately 104 feet wide by 134 feet deep; with the proposed addition it would be approximately 104 feet wide (except the rear 35 feet, which would be about $110\frac{1}{2}$ feet wide) by $140\frac{1}{2}$ feet deep. The area in square feet of the present theatre as set out in the petition is (as already stated) 13,596 square feet, while the area of the theatre with the proposed addition would be 14,515 square feet.

Previous to a trial on its merits, the following question was certified to this court under Section 5 of Chapter 298 of the General Laws: "Has the Inspector of Buildings of the City of Providence the authority under the provisions of Chapter 818 of the Public Laws, approved April 26th, 1912, to issue a building permit for the erection of the addition to the theatre of the Allen Amusement and Realty Company as described in Exhibit A in this case and in accordance with the plans and specifications thereof and as further defined by the facts contained in the stipulation entered into by counsel in this case?"

The material portion of Section 2 of Chapter 131 of the General Laws, amended by said Chapter 702 of the Public Laws (approved May 12, 1911), is as follows: "Every theatre or opera house or other building intended to be used for theatrical or other operatic performances hereafter erected for the accommodation of more than three hundred persons shall be built to comply with the requirements of this section. Every such building shall have an open court or space in the rear and on the side not bordering on the street where said building is located on a corner lot, and on the rear and both sides of the building where there is but one frontage on the street as hereinafter provided.

"Said open court or courts shall be at least six feet wide throughout their length and shall extend the full length and width of the building and across on each side and rear thereof where its side or sides do not abut on a street or alley, and shall be the same width at all points, and suitable exits shall lead into such open courts. The said open courts shall not be used for storage purposes or for any purposes whatsoever except for the exit and entrance from and to the auditorium and stage, and must be kept clear during performances."

The material part of Section 11 of said Chapter 131 of the General Laws, as amended by said Chapter 818 of the Public Laws (passed April 26, 1912), is as follows: . . . "the inspector of buildings of the City of Providence may, notwithstanding the provisions of Section 2 hereof, if in his opinion the public safety would be secured, issue his permit for the erection of any building to be erected in the city of Providence, which would be subject to the provisions of this act, if the land on which such building is to be erected is situated on a corner of two streets, and if the building is to be constructed so that its front or rear shall abut on one of such streets, and so that each side thereof shall abut on a street or an open alley at least six feet in width, and so that each side thereof shall extend on such street or alley a sufficient length to provide for all the exits required by the provisions of Chapter 472, Section 27 of the Public Laws, passed at the January session, A. D. 1909."

The material portion of said Section 27 of Chapter 472 of the Public Laws (passed at the January Session, 1909), is as follows: "Sec. 27. Every building hereafter erected or altered, to be used as a theatre, shall be subject to the following provisions of this section." . . . "Every theatre built in a block not on a corner shall have an open court or passageway on both sides extending from the proscenium line to the line of the street on the front, or, in case the building abuts on a street both in front and rear, these passages may extend from the line of the auditorium which is next parallel with or opposite the front street to the line of the rear street instead of to the front street. These passages shall be at least six feet wide throughout their length, and shall not be closed by any locked gate or doorway. They shall immediately adjoin the auditorium, or a side passage or lobby directly connected therewith. These passages shall be open to the sky opposite the whole depth of the auditorium, but may be carried out to the street front or rear through passages enclosed by brick walls or other fireproof material equally efficient, and covered by a solid brick or concrete vault at least eight inches thick, such covered passages to be each not less than eight feet wide and ten feet high throughout.

"Every theatre built upon the corner of two streets shall have one inner court or passageway on the side thereof which is parallel with or opposite the side street line of the building, such passage to be of the same description and requirements as the passages provided for in the preceding paragraph."

Chapter 818 of the Public Laws, 1912, when applied to this case, therefore, provides that, if, in the opinion of the building inspector of Providence, the public safety will be secured, such inspector may, notwithstanding the provisions of Section 2 of Chapter 131 of the General Laws, as amended by said Chapter 702 of the Public Laws, issue his permit for the erection of Allen's Theatre to be erected in Providence, provided that the land on which such theatre is to be erected is situated on the corner of two streets and if such theatre is

to be so constructed that its front or rear shall abut on one of such streets and so that each side shall abut either on a street or an open alleyway at least six feet wide and so that each side of such theatre shall extend on such street or alleyway a sufficient length to provide for all exits required by Section 27 of Chapter 472 of the Public Laws, 1909.

The undisputed facts shown by the petition, stipulation and various exhibits are that Allen's Theatre, a three-story theatre building complete in every detail, seating more than 300 people, constructed of brick, concrete and steel, fronting approximately 104 feet on Union Street, and extending back approximately 134 feet, with its northwest side abutting on Worcester Street, was erected in the City of Providence in the year 1911, upon the corner of Union and Worcester Streets, and was completely erected when said Chápter 818 of the Public Laws was passed in 1912.

The defendant therefore contends "that the petitioner does not contemplate the *erection* of a theatre in the City of Providence *to be erected* on the corner of Union and Worcester Streets and to be known as Allen's Theatre, because it has such a theatre there already, with courts, six feet wide and open to the sky in its rear and on its side; that the petitioner does not now propose to so construct Allen's Theatre that its front or rear shall abut either on Union or Worcester Streets or so that each of its sides shall abut either on Worcester Street or an open alley at least six feet in width and so that each side shall extend on said Worcester Street or such alley a sufficient length to provide for the exits required by Section 27 of Chapter 472 of the Public Laws, passed at the January Session, A. D. 1909, because said theatre is already erected with its front abutting on Union Street, with one side abutting on Worcester Street and the other side on an open alley six feet in width, and with both sides thereof now extending on Worcester Street and said alley a sufficient length to provide for all the exits required by said Section 27 of said Chapter 472."

The petitioner in this case was the respondent in the case of *Greenough* v. *Allen Theatre and Realty Company*, 33 R. I. 120, which was an information in equity brought by the then Attorney General at the relation of Spencer B. Hopkins, inspector of buildings of the City of Providence (the defendant in the present case) against Allen Theatre and Realty Company, a corporation *et al.*, seeking both a temporary and permanent injunction against the alteration by said theatre company of a stable into a theatre without the construction of the courts and passageways, adjoining the same, required by Chapter 702 of the Public Laws, 1911.

It appeared in that case that the Allen Theatre and Realty Company was the then owner of the same lot of land involved in the present case, situated on the corner of Union and Worcester Streets, in the City of Providence, with a building thereon formerly used as a stable and carriage repository; that said theatre company proposed to alter said building into a theatre to accommodate more than three hundred people by wholly changing its interior, modifying its external walls, and covering it with a new roof; that the plans and specifications therefor were filed with said Hopkins in accordance with the building law of said Providence, and by him approved; that thereafter, on April 18th, 1911, he granted a written permit to said theatre company to make such alterations; that the theatre company relying thereon, thereafter made its contracts with builders for such alterations, and work was commenced on or about April 21st, 1911; that, at the time said permit was granted, the contracts let, and the work commenced, the building law in the City of Providence was comprised in a special statute pertaining only to said city (Chapter 472 of the Public Laws, 1909), Section 27, whereof contained certain provisions as to the construction of every building thereafter erected or altered on the corner of two streets, to be used as a theatre, which we have already quoted; that on May 12, 1911, Chapter 702 of the Public Laws, 1911, in amendment of Section 2 of Chapter 131 of the General Laws was passed, requiring that any theatre or other

building intended for theatrical or other operatic perform-
ances, thereafter erected on a corner lot should have an open
court or space in the rear and one on the side not bordering
on the street, both at least six feet wide and extending the full
length and width of the building, with suitable exits leading
into such open courts.

The main contention of the respondent theatre company
was that said Chapter 702 of the Public Laws, 1911, did not
apply to its proposed alterations because the completion of
said alterations did not constitute a building "hereafter
erected" within the meaning of said Chapter 702.

It appeared that adapting said stable and carriage
repository for use as a theatre involved wholly changing the
interior of the building, the material modification of its
external walls, and the building of an entirely new roof.

The court said, p. 132: "Can it properly be said that
Billings Stable was to be altered into Allen's Theatre? We
think not. The preservation of any portion of the stable was
at most a secondary consideration and dependent entirely
upon its non-interference with the new work called for by the
theatre plans and specifications. The principal object of
consideration was the construction of Allen's Theatre, and
not the conservation of Billings Stable. To the accomplish-
ment of this object the saving of any fragment of Billings
Stable was subordinate."

The court also quoted from the case of *Armstrong* v. *Ware*,
20 Pa. St., 519, 520, which held that, under the mechanics'
lien law, when every part of a house was reconstructed except
a part of three walls, and, even in them, the openings were
new, such work constituted a building erected and not addi-
tions and alterations to an old building, and quoted from the
opinion therein as follows: "There must necessarily be
cases wherein it is difficult to decide whether work done is to
be regarded as the erection or as the alteration of a building,
unless we regard as an alteration, any building in which old
materials enter as an element, which would be unreasonable.
A saddle may be new, though old stirrups, and even some

leather of an old one be used in making it.   A sawmill may be new though it has an old waterwheel or forebay.   Where the structure of a building is so completely changed that, in common parlance, it may be properly called a new building or a rebuilding, it comes within the lien law.   This is sometimes difficult to decide, and then it must be left to the jury. Under the evidence here, the court might have decided that it is a case of a 'building erected,' within the meaning of the lien law, and ought not to have ordered a non-suit.''

The court then held that the granting of the permit to build, the making of contracts and the doing of work thereunder before the passage of said Chapter 702 gave said theatre company no vested rights in the premises which should not be disturbed.

The defendant cites *State, Delione* v. *Long Branch Commissioners,* 55 N. J. L. 108, cited also on the petitioner's brief, as stating the correct rule for the determination of the question whether the changes and alterations to a building amount to the erection of a new building.   The plaintiff in certiorari owned a frame building which he changed in various particulars, and then built a one story kitchen in the rear. The court held this to be a violation of an ordinance forbidding "the erection of a building," and laid down the principle to be applied in determining cases of this kind at p. 109, as follows :   "The principle to be applied in determining whether work of this character constitutes the *erection* of a building is not easily formulated.   In *Combs* v. *Lippincott,* 35 N. J. Law, 483, Mr. Justice Woodhull said:   'While it must be admitted that a building may be greatly changed in structure, in the materials which enter into it, and in its internal arrangements, without at all losing its identity or ceasing to be the same building, it can hardly be denied, I think, that it may be so entirely changed in plan, in structure, in dimensions, and in general appearance, as to become, in a fair sense and according to the common understanding of men, *another* building,— a new building.'   The same idea, of making the common understanding the test for distinguishing between the mere

reparation of an old building and the construction of a new building out of an old one, seems to be adopted in Pennsylvania, where the subject has received frequent examination. Thus in *Armstrong* v. *Ware*, 20 Pa. St., 519, it was said that where the structure of a building is so completely changed that, in common parlance, it may be properly called a 'new building' or a 'rebuilding,' it comes within the lien law, as a 'building erected.'" (citing Hancock's Appeal, 115 Pa. St. 1.)

"The subject is perhaps incapable of being defined more precisely and at the same time practically" . . . "considering the change in position, the new front, the increased width, the greater elevation, the different internal arrangements necessitated thereby, and the great alteration in outward appearance resulting therefrom, the structure might, according to common understanding, in common parlance be called a 'new building.'

"But there is another fact to be borne in mind. The kitchen in the rear was entirely new, and was a new building unless its being intended as an adjunct to the main building deprived it of that character. But it is not necessary that the new building should be distinct from and independent of the older building, in order to be deemed 'a building erected.' Thus, wings added to a house are regarded as buildings. *Nelson* v. *Campbell*, 28 Pa. St. 156; *Harman* v. *Cummings*, 43 Id. 322. So, also, are kitchens attached to dwellings. *Lightfoot* v. *Krug*, 35 Id. 348; *Pretz & Gausler's Appeal*, 35 Id. 349."

The defendant cites many other cases, nearly all cases of lien, with a few involving the erection of wooden houses within fire limits contrary to law, in which cases the distinction between a building erected and a building altered, repaired or added to, is drawn.

In Webster's New International Dictionary the verb "erect" is defined: "to raise, as a building; to build; construct; set up; as to erect a house or a fort."

"Where a dwelling house is enlarged, remodelled and fitted up as a livery stable, designed and established for such use, it is erected for such use within Statute 1810, Chapter 124, providing that no building shall be erected within the town of Boston as a livery stable within a certain distance of any church." Syllabus to *Hastings* v. *Aiken*, 1 Gray, 163, 165.

"There is no difference in the meaning of the word 'erect' when applied to an old building, and when applied to a part of a building. In both cases it means 'to build.'" LACEY, J., *Carroll* v. *City of Lynchburg*, 84 Va. 803, 804.

In the cases cited by defendant it was necessary to determine whether the structure resulting from the work was a building erected or a building altered or repaired, as a lien was only given in the case of a building erected, a new building as the courts held in the lien cases, and in the other cases the law or ordinance only applied to buildings "erected." The determination of that question was therefore decisive in those cases. In the case at bar such reason for determining whether the proposed building will be a building erected or an alteration of or addition to an old building does not exist. Under the provisions of said Chapter 702, the building was extended over that portion of the land of the theatre company permitted by said chapter to be occupied by a theatre building. Said Chapter 818 has removed the restriction imposed by said Chapter 702 against the occupation by such a building of a portion of the land upon which Section 702 did not permit the company to build. The question presented here therefore is whether said restriction having been so removed, the company can now extend its building over such portion of its said land as the provisions of said Chapter 818 permit to be occupied by a theatre building. In the lien cases cited the building resulting from the work done upon it, was or was not found to be a building erected, and according to the decision of that question, the lien did or did not attach. To the building resulting from the work done, the law applied.

The court in *Greenough* v. *Allen Theatre Realty Company*, *supra*, found that a stable was being altered into a theatre

and therefore the law as to the erection of a theatre applied, that is, the result of the work, what the finished structure was to be, was the material thing, and not that from which it started or the changes intervening between that and the completed structure. The court said, p. 132: "Even if portions of the stable remain in the new structure, it will constitute the erection of a theatre." So in this case, if portions of the present theatre building or all of it which it is not necessary to tear down in order to make the extensions or additions contemplated, remain in the new structure, it will nevertheless constitute the erection of a theatre building.. If Chapter 818 had been in force when the injunction was sought in *Greenough* v. *Allen Theatre and Realty Company*, that fact would not have interfered in the least with the reasoning of the court as to whether the alteration of a stable or the construction of a theatre was contemplated by the theatre company, but would only have enabled the theatre company to construct its building in conformity to the requirements of said Chapter 818, instead of said Chapter 702.

Manifestly if the land where the theatre building now stands were vacant a new theatre building could be erected on the lot owned by the theatre company, by complying with the requirements of said Chapter 818. If, therefore, the theatre company should tear down its present building it could proceed immediately under the provisions of said Chapter 818 to erect a building precisely like the building which will result from the extension of its present building proposed in this case.

In the case at bar, as in the lien cases, the law applies to the building resulting from the work done upon it. In those cases, if the resulting building was such that under the law it was subject to a lien, the lien attached, if not, it did not attach. Here if the resulting building is such as the law permits, it can be built, if not, it cannot be built. The result of the work proposed by the application for a permit to build, would clearly be a building such as is permitted by the provisions of said Chapter 818.

Our opinion is that the owner of the lot of land in question has a lawful right to construct a theatre building thereon, complying with the provisions of said Chapter 818, whether such theatre building is brought into existence by an entirely new construction or by enlargement and addition to a theatre building already existing, and that the Inspector of Buildings of the City of Providence has the authority to issue to the petitioner the permit for which application was made in this case.

The question certified is therefore answered in the affirmative.

The papers in the case with our decision certified thereon are returned to the Superior Court for further proceedings.

*Gorman, Egan and Gorman,* for petitioner.

*Albert A. Baker, City Solicitor,* for respondent.